IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                                                 |   |                          |
|-----------------------------------------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,<br>555 4th Street, NW<br>Washington, DC  20530 | ) | |
| | ) | |
| THE STATE OF ALABAMA,<br>501 Washington Avenue<br>Montgomery, AL  36130 | ) | |
| | ) | |
| THE STATE OF ALASKA,<br>1031 W. 4th Avenue, Suite. 200<br>Anchorage, AK  99501 | ) | |
| | ) | |
| THE STATE OF ARIZONA,<br>400 W. Congress Street, Suite S315<br>Tucson, AZ  85701 | ) | |
| | ) | |
| THE STATE OF ARKANSAS,<br>323 Center Street, Suite 200<br>Little Rock, Arkansas  72201 | ) | |
| | ) | Civil Action No. 16-0199 |
| THE STATE OF CALIFORNIA,<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013 | ) | |
| | ) | |
| STATE OF COLORADO, ex rel.<br>CYNTHIA H. COFFMAN, Attorney General<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 7th Floor<br>Denver, CO 80203 | ) | |
| | ) | |
| THE STATE OF CONNECTICUT,<br>55 Elm Street, P.O. Box 120<br>Hartford, CT  06141 | ) | |
| | ) | |
| THE STATE OF DELAWARE,<br>820 N. French Street, 5th Floor<br>Wilmington, DE  19801 | ) | |
| | ) | |
| THE STATE OF FLORIDA,<br>3507 E. Frontage Road, Suite 325<br>Tampa, FL 33607 | ) | |
| | ) | |
| | ) | |

THE STATE OF GEORGIA,                    )
40 Capitol Square, S.W.                  )
Atlanta, Georgia 30334                   )
                                         )
THE STATE OF HAWAII,                     )
425 Queen Street                         )
Honolulu, Hawaii  96813                  )
                                         )
THE STATE OF IDAHO,                      )
954 W. Jefferson St., 2nd Floor          )
P.O. Box 83720                           )
Boise, ID 83720-0010                     )
                                         )
THE STATE OF ILLINOIS,                   )
100 W. Randolph, 12th Floor              )
Chicago, IL 60601                        )
                                         )
THE STATE OF INDIANA,                    )
302 West Washington St., IGCS 5th Fl.    )
Indianapolis, Indiana 46204              )
                                         )
THE STATE OF IOWA,                       )
1305 E. Walnut St.                       )
Des Moines, IA 50319                     )
                                         )
THE STATE OF KANSAS,                     )
120 SW 10th Avenue, 2nd Floor            )
Topeka, KS 66612                         )
                                         )
THE COMMONWEALTH OF KENTUCKY,            )
State Capitol, Suite 118                 )
700 Capital Avenue                       )
Frankfort, Kentucky 40601                )
                                         )
THE STATE OF LOUISIANA,                  )
1185 N. Third Street                     )
Baton Rouge, Louisiana 70802             )
                                         )
THE STATE OF MAINE,                      )
Burton Cross Office Building, 6th Floor  )
111 Sewall Street                        )
Augusta, Maine 04330                     )
                                         )
THE STATE OF MARYLAND,                   )
200 Saint Paul Place                     )
Baltimore, MD  21202                     )

|                                         |   |
|-----------------------------------------|---|
| THE COMMONWEALTH                        | ) |
| OF MASSACHUSETTS,                       | ) |
| One Ashburton Place                     | ) |
| Boston, MA 02108                        | ) |
|                                         | ) |
| THE STATE OF MICHIGAN,                  | ) |
| 525 W. Ottawa Street                    | ) |
| PO Box 30755                            | ) |
| Lansing, MI 48909                       | ) |
|                                         | ) |
| THE STATE OF MINNESOTA,                 | ) |
| 445 Minnesota Street, Suite 1200        | ) |
| St. Paul, MN 55101-2130                 | ) |
|                                         | ) |
| THE STATE OF MISSISSIPPI,               | ) |
| Post Office Box 22947                   | ) |
| Jackson, MS  39225-2947                 | ) |
|                                         | ) |
| THE STATE OF MISSOURI,                  | ) |
| PO Box 899                              | ) |
| Jefferson City, MO  65102               | ) |
|                                         | ) |
| THE STATE OF MONTANA,                   | ) |
| PO Box 200151                           | ) |
| Helena MT 59620                         | ) |
|                                         | ) |
| THE STATE OF NEBRASKA,                  | ) |
| 2115 State Capitol                      | ) |
| Lincoln, NE 68509-8920                  | ) |
|                                         | ) |
| THE STATE OF NEVADA,                    | ) |
| 10791 W. Twain Avenue, Suite 100        | ) |
| Las Vegas, Nevada  89135                | ) |
|                                         | ) |
| THE STATE OF NEW HAMPSHIRE,             | ) |
| 33 Capitol Street                       | ) |
| Concord, New Hampshire 03301            | ) |
|                                         | ) |
| THE STATE OF NEW JERSEY,                | ) |
| 124 Halsey Street, 5th Floor            | ) |
| P.O. Box 45029                          | ) |
| Newark, New Jersey 07101                | ) |
|                                         | ) |

THE STATE OF NEW MEXICO,      )
P.O. Drawer 1508      )
Santa Fe, NM 87504      )
      )
THE STATE OF NEW YORK,      )
120 Broadway      )
New York, NY 10271      )
      )
THE STATE OF NORTH CAROLINA,      )
P.O. Box 629      )
Raleigh, NC 27602      )
      )
THE STATE OF NORTH DAKOTA,      )
Gateway Professional Center      )
1050 E Interstate Avenue, Suite. 200      )
Bismarck, ND  58503-5574      )
      )
THE STATE OF OHIO,      )
30 E. Broad St., 14th Floor      )
Columbus, OH 43215      )
      )
THE STATE OF OREGON,      )
1162 Court, St. NE      )
Salem, OR 97301      )
      )
THE COMMONWEALTH OF PENNSYLVANIA, )
15th Floor, Strawberry Square      )
Harrisburg, PA  17120      )
      )
THE STATE OF RHODE ISLAND,      )
150 South Main Street      )
Providence, RI 02903      )
      )
THE STATE OF SOUTH CAROLINA,      )
1000 Assembly Street, Room 519      )
Columbia, SC 29201      )
      )
THE STATE OF SOUTH DAKOTA,      )
1302 E. Highway 14, Suite 1      )
Pierre, SD 57501      )
      )
THE STATE OF TENNESSEE,      )
425 Fifth Avenue North      )
Nashville, TN 37243-3400      )
      )

THE STATE OF TEXAS,                                )
401 E. Franklin Avenue, Suite 530                  )
El Paso, Texas 79901                               )
                                                   )
THE STATE OF UTAH,                                 )
350 North State Street, Suite 230                  )
Salt Lake City, UT 84114                           )
                                                   )
THE STATE OF VERMONT,                              )
109 State Street                                   )
Montpelier, Vermont  05609                         )
                                                   )
THE COMMONWEALTH OF VIRGINIA,                      )
900 East Main Street                               )
Richmond, Virginia 23219                           )
                                                   )
THE STATE OF WASHINGTON,                           )
800 Fifth Avenue, Suite 2000                       )
Seattle, WA 98104                                  )
                                                   )
THE STATE OF WEST VIRGINIA,                        )
812 Quarrier Street, 1st Floor                     )
P.O. Box 1789                                      )
Charleston, WV  25305-0220                         )
                                                   )
THE STATE OF WISCONSIN,                            )
Post Office Box 7857                               )
Madison, Wisconsin 53707-7857                      )
                                                   )
THE STATE OF WYOMING, and                          )
2320 Capitol Ave.                                  )
Cheyenne, WY 82002                                 )
                                                   )
THE DISTRICT OF COLUMBIA,                          )
441 Fourth Street, N.W., Suite 600-S               )
Washington, DC  20001                              )
                                                   )
                    Plaintiffs,                    )
                                                   )
          v.                                       )
                                                   )
HSBC NORTH AMERICA HOLDINGS INC.,                  )
452 Fifth Avenue                                   )
New York, New York 10018                           )
                                                   )

HSBC BANK USA, NATIONAL                    )
ASSOCIATION,                               )
1800 Tysons Boulevard                      )
McLean, Virginia 22102                     )
                                           )
HSBC FINANCE CORPORATION,                  )
26525 N. Riverwoods Boulevard              )
Mettawa, Illinois 60045                    )
                                           )
HSBC MORTGAGE SERVICES INC.                )
636 Grand Regency Boulevard,               )
Brandon, FL 33510,                         )
                                           )
                  Defendants.              )
_____   )

## COMPLAINT

The United States and the States of Alabama, Alaska, Arizona, Arkansas, California,

Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa,

Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana,

Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina,

North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas,

Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, the Commonwealths of

Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of Columbia allege as

follows:

### INTRODUCTION

1.      This is a civil action filed jointly by the United States; the States of Alabama,

Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia,

Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan,

Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey,

New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South

Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia,

Wisconsin, and Wyoming; the Commonwealths of Kentucky, Massachusetts, Pennsylvania and

Virginia; and the District of Columbia against HSBC North America Holdings Inc. (HNAH"),

HSBC Bank USA, N.A. ("HBUS"), HSBC Finance Corporation ("HBIO"), and HSBC Mortgage

Services Inc. ("HMSI") (collectively, the "Defendants"), for misconduct related to their

origination and servicing of single family residential mortgages.

2.        As described below, Defendants' misconduct resulted in the issuance of improper

mortgages, unfair and deceptive acts and practices in connection with loan servicing, premature

and unauthorized foreclosures, violation of homeowners' rights and protections, the use of false

and deceptive affidavits and other documents, and the waste and abuse of taxpayer funds.  Each

of the allegations regarding Defendants contained herein applies to instances in which one or

more of the Defendants, either themselves or through their affiliates or subsidiaries, engaged in

the conduct alleged.

## THE PARTIES

3.        This action is brought by the United States of America, on behalf of its agencies

and departments, acting through the United States Department of Justice.

4.        This action is also brought by the States of Alabama, Alaska, Arizona, Arkansas,

California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana,

Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri,

Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee,

Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming; the

Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia; and the District of

Columbia.  Collectively the plaintiffs identified in this paragraph are referred to here as the "Plaintiff States."  This action is brought by the Attorneys General of the Plaintiff States pursuant to consumer protection enforcement authority conferred on them by state law (or, in the case of the District of Columbia, by District of Columbia law) and pursuant to *parens patriae* and common law authority.  The Attorneys General are authorized to seek injunctive relief, restitution for consumers, disgorgement of unjust enrichment or unlawful gains, and civil penalties for violation of the consumer protection laws of their States.

5.      Defendant HNAH is a bank holding company in the United States.  Through its subsidiaries, it provides banking, investment and other financial services to its customers.  It is a Delaware corporation with its principal place of business in New York, New York.

6.      Defendant HBUS is a U.S. national banking association that originates and serviced residential mortgage loans.  Its principal place of business is in McLean, Virginia.

7.      Defendant HBIO through its subsidiaries is a consumer finance company that originated and services residential mortgage loans.  It is a Delaware corporation with its principal place of business in Mettawa, Illinois.

8.      Defendant HMSI is a mortgage servicing company that services home mortgage loans secured by residential properties.  It is a Delaware corporation with its principal place of business in Brandon, Florida.

9.      Defendants HBUS, HBIO and HMSI are subsidiaries of Defendant HNAH.

10.      The business of some Defendants or their subsidiaries includes origination or servicing of residential mortgage loans.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Defendants because Defendants, themselves or through their subsidiaries, have transacted business in this District, and because Defendants, themselves or through their subsidiaries, have committed acts proscribed by the False Claims Act in this District.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, pursuant to 28 U.S.C. § 1345 because this is a civil action commenced by the United States, pursuant to 28 U.S.C. § 1355(a) because this is an action for the recovery or enforcement of a fine or penalty incurred under an Act of Congress, and pursuant to 31 U.S.C. § 3732(a) to the extent the claims arise under the False Claims Act, 31 U.S.C. §§ 3729 to 3733.

13.     Pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b), this Court has supplemental jurisdiction over the subject matter of the claims asserted by the States in this action because those claims are so related to the claims asserted by the United States that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the action brought by the United States under the False Claims Act, 31 U.S.C. §§ 3729 to 3733.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 31 U.S.C. § 3732(a).

## BACKGROUND

**A.      Overview of Relevant Federal Programs**

      **1.      The Federal Housing Administration (FHA)**

15.     The FHA provides mortgage insurance on loans made by FHA-approved lenders throughout the United States.  Among other things, FHA insures mortgages on "single family" housing, which refers to one- to four- family dwellings.  See, e.g., 12 U.S.C. § 1709; see generally 24 C.F.R. Part 203.

16.     FHA mortgage insurance provides lenders with protection against losses when home buyers default on mortgage loans insured by FHA.  See generally 12 U.S.C. § 1710, 24 C.F.R. Part 203.

17.     FHA-approved lenders, known as Direct Endorsement Lenders, ensure that loans meet strict underwriting criteria, including income-verification, credit analysis, and property appraisal, established by the FHA to be eligible for insurance.  See 24 C.F.R. § 203.5(c)-(e) (Direct Endorsement requirements for underwriter due diligence, mortgagor income evaluation, and appraisal).

18.     The FHA insurance operations are funded by a statutorily established Mutual Mortgage Insurance Fund (MMIF).  12 U.S.C. § 1708(a).  The MMIF is sustained by insurance premiums, and the Secretary of the U.S. Department of Housing and Urban Development is required to provide for an annual actuarial study to assess the financial position of the MMIF.  12 U.S.C. § 1708(a)(4), (7).

19.     The FHA insurance program, by reducing the risk borne by approved lenders, is designed to stimulate lending to creditworthy borrowers, thereby increasing homeownership and aiding local communities in the form of community development, increased tax bases, and related benefits.

>    **2.     The Department of Agriculture's Rural Housing Service Rural Housing Guarantee Program (RHS)**

20.     The RHS program provides mortgage insurance guarantees for loans made to qualified borrowers for housing in rural communities.  See 7 C.F.R. § 1980.345 (applicant eligibility).  The RHS partners with a broad range of eligible lenders.  When an eligible lender certifies that all program requirements have been met, delivers a completed Loan Closing Report, and pays the guarantee fee, the RHS concurrently executes a loan note guarantee. 7 C.F.R. §§ 1980.309(a) (qualification of lenders), 1980.361 (issuance of loan note guarantee).

21.     The RHS loan program is intended "to assist eligible households in obtaining adequate but modest, decent, safe, and sanitary dwellings and related facilities for their own use in rural areas."  7 C.F.R. § 1980.301(a).

22.     Like the FHA insurance program, the RHS program promotes lending to creditworthy borrowers that meet the Department of Agriculture's underwriting requirements.

**3.     The United States Department of Veterans Affairs (VA) Loan Guaranty Service Home Loan Program**

23.     The VA Home Loan Program's guaranties are issued to help eligible service members, veterans, reservists, and certain unmarried surviving spouses obtain homes, condominiums, residential cooperative housing units, and manufactured homes.  38 U.S.C. §§ 3701(b)(3), 3710(a), 3712.  The primary purpose of the VA Home Loan Program is to help such individuals finance the purchase of homes on more advantageous terms than typically would be available to them.

24.     The VA provides a repayment guarantee to qualified lenders equal to a specified percentage of the loan upon default of the primary debtor.  38 U.S.C §§ 3702(d), 3712(c)(2)-(3); 38 C.F.R. §§ 36.4202, 36.4225.  Only loans meeting the VA's underwriting requirements are entitled to the VA's insurance guarantee.

25.     By providing protection in the event of a default, the VA's insurance program encourages lenders to provide financing to veterans.

### 4.     The United States Trustee Program

26.     The United States Trustee Program is a component of the Department of Justice that seeks to promote the efficiency and protect the integrity of the Federal bankruptcy system. To further the public interest in the just, speedy, and economical resolution of cases filed under the Bankruptcy Code, the Program monitors the conduct of bankruptcy parties and private estate trustees, oversees related administrative functions, and acts to ensure compliance with applicable laws and procedures.  It also identifies and helps investigate bankruptcy fraud and abuse in coordination with United States Attorneys, the Federal Bureau of Investigation, and other law enforcement agencies.

27.     The primary role of the U.S. Trustee Program is to serve as the "watchdog" over the bankruptcy process.

28.     United States Trustees supervise the administration of liquidation proceedings under Chapter 7 of the Bankruptcy Code, reorganization proceedings under Chapter 11, family farm and fisherman reorganization proceedings under Chapter 12, and "Wage-earner" reorganization proceedings under Chapter 13.

29.     Specific responsibilities of the United States Trustees include appointing and supervising private trustees who administer Chapter 7, 12, and 13 bankruptcy estates (and serving as trustees in such cases where private trustees are unable or unwilling to serve); taking legal action to enforce the requirements of the Bankruptcy Code and to prevent fraud and abuse; referring matters for investigation and criminal prosecution when appropriate; ensuring that bankruptcy estates are administered promptly and efficiently, and that professional fees are

reasonable; appointing and convening creditors' committees in Chapter 11 business

reorganization cases; reviewing disclosure statements and applications for the retention of

professionals; and advocating matters relating to the Bankruptcy Code and rules of procedure in

court.

**B.      The Single Family Mortgage Industry**

30.     The single family mortgage industry consists of financial services and other firms

that originate, underwrite, securitize, and service mortgages for residential properties designed to

house one- to four-family dwellings.

31.     Mortgage origination is the process whereby a lender loans money to a borrower

and receives a security interest in property, through a mortgage or comparable device that

secures the loan.  Origination generally includes all the steps from receiving a loan application

through disbursal of the loan proceeds.

32.     For more than thirty years, mortgages typically have been "pooled" to create an

investment vehicle, often denominated as a trust, and interests in the trusts have been sold to

investors that own interests in payment streams generated by principal and interest payments by

the borrowers.

33.     After mortgages are originated, a "servicer" is responsible for mortgage

administration activities, known as servicing activities, which generally include collecting

payments from mortgagors; applying payments made in an agreed-upon order to the mortgagor's

indebtedness; distributing payments after allowable deductions to the investment trust entities for

distribution to investors; making advances to cover delinquent mortgage payments and other

costs, such as the costs of protecting and maintaining properties that collateralize mortgage loans

when mortgagors fail to do so; pursuing collections from delinquent mortgagors; and pursuing

either loss mitigation or foreclosure, as appropriate, to minimize the loss to investors and others when mortgagors become delinquent on mortgage payments.

**C.     The United States' Stimulus / Rescue Efforts**

34.     Beginning in the fall of 2008, the federal government instituted several measures to try to stabilize the housing and credit markets and assist troubled homeowners.

35.     In October 2008, the Emergency Economic Stabilization Act of 2008 (EESA) was passed to promote stability and liquidity in the financial system.  Among other things, EESA authorized the Secretary of the Treasury to establish the Troubled Asset Relief Program (TARP). TARP funds were used, in part, to promote various mortgage loan modification programs.

36.     *The Making Home Affordable (MHA) Program.*  In March 2009, the United States launched the MHA Program.  The MHA Program included the Home Affordable Modification Program (HAMP), a Treasury program that uses TARP funds to provide incentives for mortgage servicers to modify eligible first-lien mortgages.

37.     HAMP uses incentive payments to encourage loan servicers and owners of mortgage loans or bonds backed by mortgage loans to modify eligible first lien mortgages so that monthly payments of homeowners who are in default or at imminent risk of default will be reduced to affordable and sustainable levels.

38.     *The Home Price Decline Protection Incentives (HPDP) initiative.* The HPDP initiative is designed to encourage modifications of loans in markets hardest hit by falling home prices.   The HPDP initiative provides investors with additional incentives for loan modifications on properties located in areas where home prices have recently declined and where investors are concerned that price declines may persist.

39.     *The Principal Reduction Alternative (PRA).*  PRA is designed to encourage the use of principal reduction in modifications for eligible borrowers whose homes are worth significantly less than the remaining outstanding principal balances of their first-lien mortgage loans.  It provides investor incentives to offset a portion of the principal reduction.

40.     *The Home Affordable Unemployment Program (UP).*  UP is designed to offer assistance to unemployed homeowners through temporary forbearance of a portion of their mortgage payments.

41.     *The Home Affordable Foreclosure Alternatives Program (HAFA).*  HAFA is designed to provide incentives to servicers, investors, and borrowers to utilize short sales and deeds-in-lieu of foreclosure for HAMP-eligible loans in cases in which the borrower can no longer afford to stay in their home but wants to avoid foreclosure.  Under this program, the servicer releases the lien against the property and the investor waives all rights to seek a deficiency judgment against a borrower who uses a short sale or deed-in-lieu when the property is worth less than the outstanding principal balance of the mortgage.

42.     *The Second Lien Modification Program (2MP).*  2MP is designed to modify second lien mortgages when a corresponding first lien is modified under HAMP.

43.     *The FHA-HAMP Program.*  The FHA-HAMP Program is designed to provide compensation to the holders and servicers of FHA-insured mortgages that are modified under FHA-HAMP, to reduce payments to more affordable levels.

44.     *The Treasury/FHA Second-Lien Program (FHA2LP).*  FHA2LP is designed to facilitate refinancing under the FHA Short Refinance Program by reducing second liens.  Treasury provides incentives to participating servicers and investors who agree to partial or full extinguishment of second liens associated with an FHA refinance.

45.     *The FHA Refinance for Borrowers with Negative Equity (FHA Short Refinance)*
*Program.*  This program is partially supported by TARP funds and allows servicers and investors
who write down a borrower's principal balance on a non-FHA-insured, existing, underwater,
first-lien mortgage loan in connection with a refinancing to obtain FHA insurance on the newly
refinanced mortgage.  Treasury has provided a TARP-funded letter of credit for up to $8 billion
in loss coverage on these newly refinanced FHA loans.

46.     *Housing Finance Agency Hardest Hit Fund (HHF).*  HHF is a TARP-funded
program designed to fund foreclosure prevention programs run by state housing finance agencies
in states hit hardest by the decrease in home prices and in states with high unemployment rates.
Eighteen states and Washington, D.C. have received approval for aid through this program.

## FACTUAL ALLEGATIONS

### A.     Defendants' Servicing Misconduct

47.     Defendants service or previously serviced home mortgage loans secured by
residential properties owned by individual citizens of the Plaintiff States, and of the United
States.

48.     Defendants, themselves or through their subsidiaries, engaged in trade or
commerce in each of the Plaintiff States and are subject to the consumer protection laws of the
States. Under the States' consumer protection laws, Defendants are prohibited from engaging in
unfair or deceptive practices with respect to consumers.

49.     As mortgage servicers, Defendants regularly conducted or managed loss
mitigation and foreclosure of single family residences on behalf of the entities that hold the loans
and mortgages and that hired Defendants as servicers.

50.     Pursuant to HUD regulations and FHA guidance, FHA-approved mortgage lenders and their servicers are required to engage in loss mitigation efforts to avoid the foreclosure of HUD-insured single family residential mortgages.  E.g., 24 C.F.R. § 203.500 et seq.; Mortgagee Letter 2008-07 ("Treble Damages for Failure to Engage in Loss Mitigation") (Sept. 26, 2008); Mortgagee Letter 1996-25 ("Existing Alternatives to Foreclosure -- Loss Mitigation") (May 8, 1996).  Thus, when acting as a servicer, Defendants were required to refrain from foreclosing on any FHA insured mortgage where a default could be addressed by modifying the terms of the mortgage or other less-costly alternatives to foreclosure were available.

51.     Under the Treasury's various rescue and stimulus programs, HBUS, in its capacity as servicer of single family residential mortgage loans owned by government sponsored entities ("GSEs"), received monetary incentives from the Federal government in exchange for modifying defaulting borrowers' single family residential GSE mortgages.  See, e.g., Making Home Affordable Handbook v.1.0, ch. 13 ("Incentive Compensation") (Aug. 19, 2010).  Under the programs, HBUS agreed to fulfill requirements set forth in GSE program guidelines and servicer participation agreements.

52.     Under FHA regulations and guidance and HAMP and other MHA servicer participation agreements, HBUS was obligated to follow specific requirements in the foreclosure of single family residential mortgages that are FHA insured, or where the servicer conducting the foreclosure is an MHA participant.

53.     As described below, in the course of their servicing of mortgage loans, Defendants engaged in a pattern of unfair and deceptive acts and practices in violation of the

States' consumer protection laws, and violated federal laws, program requirements, and

contractual requirements governing loan servicing.

**1.     Defendants' Servicing Processes**

54.     In the course of their conduct, management and oversight of loan servicing in the

United States and in the Plaintiff States, Defendants engaged in the following acts and practices:

a.      failing to timely and accurately apply payments made by borrowers and

failing to maintain accurate account statements;

b.      charging unauthorized fees for default-related services;

c.      imposing force-placed insurance when Defendants knew or should have

known that borrowers already had adequate coverage; and

d.      providing false or misleading information in response to borrower

complaints.

**2.     Defendants' Loan Modification and Loss Mitigation Processes**

55.     In the course of their conduct, management, and oversight of loss mitigation and

loan modifications in the United States and in the Plaintiff States, Defendants engaged in the

following acts and practices:

a.      failing to perform proper loan modification underwriting;

b.      failing to gather or losing loan modification application documentation

and other paper work;

c.      failing to provide adequate staffing to implement programs;

d.      failing to adequately train staff responsible for loan modifications;

e.      failing to establish adequate processes for loan modifications;

f.      allowing borrowers to stay in trial modifications for excessive time

periods;

g.      wrongfully denying modification applications;

h.      failing to respond to borrower inquiries;

i.      providing false or misleading information to consumers about the status of

loss mitigation review, including while referring loans to foreclosure;

j.      providing false or misleading information to consumers about the status of

foreclosure proceedings where the borrower was in good-faith actively pursuing a loss

mitigation alternative offered by Defendants;

k.      misrepresenting to borrowers that loss mitigation programs would provide

relief from the initiation of foreclosure or further foreclosure efforts;

l.      failing to provide accurate and timely information to borrowers who seek

information about loss mitigation services, including loan modifications;

m.      falsely advising borrowers that they must be at least 60 days delinquent in

loan payments to qualify for a loan modification;

n.      failing to properly calculate borrowers' eligibility for loan modification

programs and improperly denying loan modification relief to eligible borrowers;

o.      misrepresenting to borrowers that loan modification applications would be

handled promptly when Defendants regularly failed to act on loan modifications in a

timely manner;

p.      failing to properly process borrowers' applications for loan modifications,

including failing to account for documents submitted by borrowers and failing to respond

to borrowers' reasonable requests for information and assistance, and as a result, denying

loan modifications to consumers who were eligible;

      q.      failing to assign adequate staff resources with sufficient training to handle

the demand from distressed borrowers; and

      r.      providing false or misleading reasons for denial of loan modifications.

**3.      Defendants' Conduct Related to Foreclosures**

56.      In the course of its conduct, management, and oversight of foreclosure activities

in the United States and the Plaintiff States, Defendants have engaged in the following acts and

practices:

      a.      failing to properly identify the foreclosing party;

      b.      charging unauthorized fees related to foreclosures;

      c.      preparing, executing, notarizing, or presenting false and misleading

documents, filing false and misleading documents with courts and government agencies,

or otherwise using false or misleading documents as part of the foreclosure process

(including, but not limited to, affidavits, declarations, certifications, substitutions of

trustees, and assignments);

      d.      preparing, executing, notarizing, and filing affidavits in foreclosure

proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits

and did not review any or reviewed insufficient information or documentation to verify

the assertions in such affidavits.  This practice of repeated false attestation of information

in affidavits is popularly known as "robosigning."  Where third parties engaged in

robosigning on behalf of Defendants, they did so with the knowledge and approval of

Defendants;

e.      executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law;

f.      misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents;

g.      inappropriately charging servicing, document creation, recordation, and other costs and expenses related to foreclosures; and

h.      inappropriately dual-tracking foreclosure and loan modification activities, and failing to communicate with borrowers with respect to foreclosure activities.

**B.      Defendants' Origination Misconduct**

**1.      Unfair and Deceptive Origination Practices**

57.      Under the States' consumer protection laws, Defendants are prohibited from engaging in unfair or deceptive practices with respect to consumers.

58.      Defendants regularly originate or originated mortgage loans.

59.      In the course of their origination of mortgage loans in the Plaintiff States, Defendants have engaged in a pattern of unfair and deceptive practices.  Among other consequences, these practices caused borrowers in the Plaintiff States to enter into unaffordable mortgage loans that led to increased foreclosures in the States.

**2.      The Direct Endorsement Program**

60.      The FHA's Direct Endorsement Program is a vital part of its single-family insured mortgage program.  Under the Direct Endorsement Program, the FHA does not review or approve borrower loan applications.  Rather, the FHA approves lenders, called Direct Endorsement Lenders (DE Lenders), which have the responsibility and obligation for underwriting the loan and determining whether a proposed mortgage is eligible for FHA

insurance according to FHA rules and requirements.  Unconditional DE Lenders employ Direct Endorsement Underwriters, who are authorized to perform the underwriting of mortgage loans to be insured by the FHA.  The DE Lenders give the FHA full information and documentation about an underwritten loan only after the mortgage has closed, and both the underwriter and DE Lender certify compliance with FHA requirements in submitting the loan for mortgage insurance.  Although the FHA conducts regular desk reviews and brings enforcement actions, the FHA does not, and given its resources cannot, review the details of every loan. The FHA therefore relies on the underwriter's and DE Lender's certifications and due diligence as evidence of the insurability of a mortgage.

61.     DE Lenders are responsible for all aspects of the mortgage application, the property analysis, and loan underwriting.  The FHA relies on DE Lenders to determine (1) a borrower's ability and willingness to repay a mortgage loan, 24 C.F.R. § 203.5(d), and (2) appraisal of the property offered as security.  24 C.F.R. § 203.5(e)(3).

62.     Careful compliance by DE Lenders with all FHA requirements is important in part because if a borrower defaults on an FHA-insured mortgage, the holder of the mortgage can submit a claim to the FHA for any loss associated with the defaulted mortgage.

63.     FHA regulations provide that each DE Lender owes the FHA the duty to "exercise the same level of care which it would exercise in obtaining and verifying information for a loan in which the mortgagee would be entirely dependent on the property as security to protect its investment."  24 C.F.R. § 203.5(c).  DE Lenders also owe the FHA a common law duty of due diligence.  See 48 Fed.  Reg.  11928, 11932 (Mar.  22, 1983).  In addition, a fiduciary relationship exists between DE Lenders and the FHA.  DE Lenders have a duty to the FHA to act with the utmost good faith, candor, honesty, integrity, fairness, undivided loyalty,

and fidelity, and to refrain from taking advantage of the FHA by misrepresentation or lack of

disclosure.  DE Lenders are required to exercise sound judgment, prudence, and due diligence on

behalf of the FHA in endorsing mortgages for FHA insurance.

64.    DE Lenders are required to be familiar with, and to comply with, the current

versions of governing FHA Handbooks and Mortgagee Letters, including HUD Handbook

4155.1, Mortgage Credit Analysis for Mortgage Insurance on One- to Four-Unit Mortgage

Loans, HUD Handbook 4155.2, Lender's Guide to the Single Family Mortgage Insurance

Process, and HUD Handbook 4150.2, Valuation Analysis for Single Family One- to Four-Unit

Dwellings.

### 3.    Failure to Comply With Quality Control Requirements

65.    To qualify as a DE Lender, a lender has to have a fully functioning Quality

Control (QC) Program that complies with FHA requirements from the date of its initial FHA

approval until final surrender or termination of its approval.

66.    QC plans ensure that DE Lenders follow all the FHA requirements, ensure that

procedures and personnel used by DE Lenders meet FHA requirements, and provide for the

correction, where necessary, and reporting of problems once a DE Lender becomes aware of

their existence.

67.    Under its QC requirements, the FHA requires DE Lenders to review all early

payment defaults.  Early payment defaults are mortgages that go into default (i.e., are more than

60 days past due) within the first six payments of the mortgage.

68.    Early payment defaults may indicate problems in the underwriting process.  DE

Lenders are required to review early payment defaults so they can identify, correct, and report

them to the FHA.

69.     A DE Lender whose QC program fails to provide for appropriate review of each early payment default is in violation of the FHA's QC requirements.

70.     Defendants submitted loans for insurance endorsement or claims for insurance benefits for FHA loans that Defendants endorsed or underwrote as a participant in the FHA's Direct Endorsement Program while failing to implement applicable QC measures.

71.     Defendants failed to review early payment defaults.

72.     Defendants failed to dedicate sufficient staff to QC.

73.     Defendants failed to address dysfunctions in their QC system.

74.     The FHA has paid insurance claims relating to mortgages insured by FHA based on Defendants' false certifications that they had properly established and functioning QC programs.  The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about Defendants' QC failures.

75.     To get and maintain DE Lender status, a DE Lender has to submit an annual certification to the FHA, stating that it conforms to all HUD/FHA regulations, handbooks, and policies.

76.     Absent such a certification, a DE Lender cannot submit a mortgage for FHA insurance endorsement.

77.     Contrary to the annual certifications made by Defendants, they failed to have QC programs as mandated by FHA requirements.

78.     The FHA has paid insurance claims relating to mortgages insured by FHA based on Defendants' false certifications.  The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about Defendants' false certifications.

C.     **Defendants' Bankruptcy-Related Misconduct**

79.     In the ordinary course of their businesses, Defendants regularly appear as

creditors, or on behalf of creditors, in bankruptcy cases, including bankruptcy cases commenced

in this district and over which this Court has original jurisdiction under 28 U.S.C. § 1334,

seeking the payment of money from bankruptcy estates and/or prosecuting motions seeking relief

from the automatic stay to foreclose on consumer mortgages.

80.     Defendants have bankruptcy procedures that are utilized or relied upon by

Defendants and their attorneys, contractors, and other agents when Defendants file documents,

including proofs of claim and motions seeking relief from the automatic stay in bankruptcy

cases.  Use of these bankruptcy procedures has resulted in an insufficient level of oversight and

safeguards regarding pleadings and documents filed by Defendants or their agents in bankruptcy

cases and their conduct during the bankruptcy cases.

81.     Use of these bankruptcy procedures has resulted in the filing of signed pleadings

and documents in bankruptcy cases as to which the signatory has not conducted a reasonable

inquiry into the factual contentions or allegations, as required by applicable law, including Fed.

R. Civ. P. 11 and Fed. R. Bankr. P. 9011.

82.     Use of these bankruptcy procedures has also resulted in a failure to exercise

adequate supervision over Defendants' attorneys, contractors, and other agents in bankruptcy

proceedings.

83.     As a result of the use of inadequate bankruptcy procedures, the conduct of

Defendants or their agents has resulted in, among other things, some or all of the following:

a.     making representations that were inaccurate, misleading, false, or for

which Defendants, at the time, did not have a reasonable basis to make, including without

limitation representations contained in proofs of claim under 11 U.S.C. § 501, motions

for relief from the automatic stay under 11 U.S.C. § 362, or other documents;

b.     filing proofs of claim, motions for relief from stay, or other documents

that failed to include documentation required under the Federal Rules of Bankruptcy

Procedure, local court rules, local court standing orders, or other applicable rules or law,

such as the original or a duplicate of the writing on which the secured claim is based,

evidence that the security interest has been perfected, a statement setting forth the terms

of and any documentation of a transfer of the claim, or other documentation;

c.     filing lost note affidavits in connection with proofs of claim, motions for

relief from stay, or other documents that were inaccurate, misleading, or false, or for

which Defendants, at the time, did not have a reasonable basis to make;

d.     filing proofs of claim, motions for relief from stay, or other documents

where Defendants sought payment from debtors or bankruptcy estates for amounts that

Defendants were not legally entitled to collect, such as seeking principal, interest, fees,

escrow amounts, and/or advances that were not incurred, were in excess of what is

collectable under the loan documents, were not reasonable or appropriate to protect the

note holder's interest in the property and rights under the security instrument, or were

inconsistent with an approved loan modification;

e.     filing proofs of claim or motions for relief from stay without required

itemizations for principal, interest, fees, escrow amounts, and/or advances;

f.     filing proofs of claim, motions for relief from stay, or other documents

that inaccurately represented or failed to document ownership of the claim or right to

seek relief;

g.      commencing collection activities against the debtor or the debtor's

property without court authorization, or in violation of the terms of a confirmed chapter

13 plan, the discharge injunction under 11 U.S.C. § 524, or the automatic stay under 11

U.S.C. § 362;

h.      filing proofs of claim, motions for relief from stay, or other documents or

otherwise commencing collection activities seeking to recover amounts on debts that

have been paid or satisfied, including through a refinance of the debt, or a sale or short

sale of the collateral;

i.      collecting, or attempting to collect, attorney's fees and other charges for

the preparation and filing of proofs of claim, motions for relief from stay, or other

documents, that Defendants ultimately withdrew or that a court denied;

j.      failing to promptly and accurately apply payments resulting in inaccurate

loan accounting and wrongful or inaccurate allegations of loan defaults;

k.      filing proofs of claim, motions for relief from stay, or other documents

that inaccurately or falsely represented they were signed by a person with direct

knowledge of the matters alleged in the filing;

l.      filing affidavits or other documents requiring notarization where

Defendants inaccurately or falsely represented that the documents were validly notarized;

m.      failing to provide required notices to the debtor, trustee, or the court

regarding payment changes resulting from a change in interest rate and/or escrow

charges;

n.      failing to provide notice to the debtor, trustee, or court regarding fees,

charges, and expenses assessed or incurred after the petition date; or

o.      failing to promptly provide a reconciliation of payments received with

respect to the debtor's obligations in the case or failing to appropriately update

Defendants' systems of record, including upon dismissal or closure of a bankruptcy case.

84.     Defendants implemented and relied upon inadequate bankruptcy procedures

despite having actual or constructive notice that such procedures could, and did, lead to the

errors described above.

85.     Use of these bankruptcy procedures has also resulted in Defendants seeking

inappropriate relief from debtors under the Bankruptcy Code, including under 11 U.S.C. §§ 362

and 501, and in violation of 11 U.S.C. § 524.

## COUNT I

## VIOLATIONS OF STATE LAW PROHIBITING UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO LOAN SERVICING

86.     The allegations in paragraphs 1 through 85 above are incorporated herein by

reference.

87.     The loan servicing conduct of Defendants, as described above, constitutes unfair

or deceptive practices in violation of the consumer protection laws of each Plaintiff State.

88.     Defendants' unlawful conduct has resulted in injury to the States and citizens of

the States who have had home loans serviced by Defendants.  The harm sustained by such

citizens includes payment of improper fees and charges, unreasonable delays and expenses to

obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to

improper, unlawful, or undocumented foreclosures.  The harm to the States includes the

subversion of their legal processes and the sustained violations of their laws.  The States have

had to incur substantial expenses in the investigations and attempts to obtain remedies for

Defendants' unlawful conduct.

## COUNT II

### VIOLATIONS OF STATE LAW PROHIBTING UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO FORECLOSURE PROCESSING

89.     The allegations in paragraphs 1 through 85 above are incorporated herein by reference.

90.     The foreclosure processing conduct of Defendants, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each Plaintiff State.

91.     Defendants' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans serviced by Defendants.  The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm to the States includes the subversion of their legal process and the sustained violations of their laws.  The States have had to incur expenses in the investigations and attempts to obtain remedies for Defendants' unlawful conduct.

## COUNT III

### VIOLATIONS OF STATE LAW PROHIBTING UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO LOAN ORIGINATION

92.     The allegations in paragraphs 1 through 85 above are incorporated herein by reference.

93.     The loan origination conduct of Defendants, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each Plaintiff State.

94.     Defendants' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans originated by Defendants.  The harm sustained by such

citizens includes payment of improper fees and charges, unreasonably high mortgage payments, unaffordable mortgages, and loss of homes.  The harm to the States includes the subversion of their legal processes and the sustained violations of their laws.  The States have had to incur substantial expenses in the investigations and attempts to obtain remedies for Defendants' unlawful conduct.

**COUNT IV**

**VIOLATIONS OF THE
FALSE CLAIMS ACT,
31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), (a)(1)(C) and (a)(1)(G) (2009),
and 31 U.S.C. §3729(a)(1), (a)(2), (a)(3) and (a)(7) (1986)**

95.     The allegations in paragraphs 1 through 85 above are incorporated herein by reference.

96.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval, including but not limited to improper claims for payment of FHA residential mortgage insurance or guarantees.

97.     In so doing, the Defendants acted knowingly; that is, Defendants possessed actual knowledge that the claims for payment were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the claims for payment; or acted in reckless disregard of the truth or falsity of the claims for payment.

98.     By virtue of the acts described above, Defendants made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

99.     In so doing, the Defendants acted knowingly; that is, Defendants possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in

deliberate ignorance of the truth or falsity of the information, statements and representations; or acted in reckless disregard of the truth or falsity of the information, statements and representations.

100.    By virtue of the acts described above, Defendants made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, and concealed or improperly avoided or decreased an obligation to pay or transmit money or property to the United States.

101.    In so doing, the Defendants acted knowingly; that is, Defendants possessed actual knowledge that the information, statements, and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements, and representations; or acted in reckless disregard of the truth or falsity of the information, statements, and representations.

102.    By virtue of the acts described above, Defendants conspired with one or more persons: to present or cause to be presented to the United States false or fraudulent claims for payment or approval; to make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim; and, to make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government; or to conceal or improperly avoid or decrease an obligation to pay or transmit money or property to the United States.

## COUNT V

## VIOLATION OF THE FINANCIAL INSTITUTIONS
## REFORM, RECOVERY AND ENFORCEMENT ACT OF 1989,
## 12 U.S.C. § 1833A (FIRREA)

103.    The allegations in paragraphs 1 through 85 above are incorporated herein by reference.

104.    Defendants knowingly made or presented false and fictitious claims to Departments of the United States.

105.    The claims were material to decisions of the United States.

106.    In connection with matters within the jurisdiction of the United States, Defendants knowingly and willfully engaged in conduct that:  (a) falsified, concealed or covered up by artifices, schemes or devices, material facts, (b) made statements and representations that violate 18 U.S.C. § 1001(a), and (c) made and used false writings or documents knowing the same to contain materially false and fictitious statements and entries.

107.    Defendants' schemes affected federally insured financial institutions.

## COUNT VI

## DECLARATORY JUDGMENT UNDER
## 28 U.S.C. §§ 2201 and 2202
## REGARDING DEFENDANTS' BANKRUPTCY MISCONDUCT

108.    The allegations in paragraphs 1 through 85 above are incorporated herein by reference.

109.    Defendants implemented and relied on inadequate bankruptcy procedures and thereby have prejudiced debtors, creditors, including the United States, and the courts in

bankruptcy cases, have caused increased errors, delays, and costs of administration in bankruptcy cases, and such acts constitute a continuing abuse of the bankruptcy process.

110.    Defendants implemented and relied on inadequate bankruptcy procedures and thereby have violated the standards of conduct required of creditors by applicable law, including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or have caused violations of such law.

111.    Defendants implemented and relied upon inadequate bankruptcy procedures that abused the bankruptcy process.

112.    Defendants' unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy whose home loans are or were serviced by Defendants.  The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases.  Such conduct has also caused the United States to assume increased administrative duties in monitoring bankruptcy cases, and to incur expenses in the investigations and litigation of Defendants' unlawful conduct.

## COUNT VII

**DAMAGES UNDER COMMON LAW**
**RELATED TO DEFENDANTS' BANKRUPTCY MISCONDUCT**

113.    The allegations in paragraphs 1 through 85 above are incorporated herein by reference.

114.     Defendants implemented and relied on inadequate bankruptcy procedures and thereby have prejudiced debtors, creditors, including the United States, and the courts in bankruptcy cases, has led to increased errors, delays, and costs of administration in bankruptcy cases, and such acts constitute a continuing abuse of the bankruptcy process.

115.     Defendants' abuse of the bankruptcy process violated a duty or duties owed by Defendants to the debtors, the courts, and other parties in such bankruptcy cases, including the United States.

116.     Defendants' abuse of the bankruptcy process violates a federal policy, reflected in the Bankruptcy Code and the Bankruptcy Rules, in favor of the efficient and equitable administration of bankruptcy cases, as well as the policy of ensuring accuracy in claims submitted to the bankruptcy courts.

117.     Defendants' unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy whose home loans are or were serviced by Defendants.  The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases.  Such conduct has also caused the United States to assume increased administrative duties in monitoring bankruptcy cases, and to incur expenses in the investigations and litigation of Defendants' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, the United States and the Plaintiff States respectfully request that judgment be entered in their favor and against Defendants as follows:

1.      On Count I, judgment against the Defendants, injunctive relief to restrain Defendants from further unlawful conduct; an order requiring disgorgement of unlawful gains obtained by Defendants as a result of their unlawful conduct; restitution or other remedial relief to compensate individual victims of Defendants' unlawful conduct; civil penalties; and attorney fees and costs of investigation.

2.      On Count II, judgment against the Defendants, injunctive relief to restrain Defendants from further unlawful conduct; an order requiring disgorgement of unlawful gains obtained by Defendants as a result of their unlawful conduct; restitution or other remedial relief to compensate individual victims of Defendants' unlawful conduct; civil penalties; and attorney fees and costs of investigation.

3.      On Count III, judgment against the Defendants, injunctive relief to restrain Defendants from further unlawful conduct; an order requiring disgorgement of unlawful gains obtained by Defendants as a result of their unlawful conduct; restitution or other remedial relief to compensate individual victims of Defendants' unlawful conduct; civil penalties; and attorney fees and costs of investigation.

4.      On Count IV, judgment against the Defendants, for treble damages and civil penalties in an amount as the Court may determine between $5,500 and $11,000 for each violation;

5.      On Count V, for a civil penalty of up to $1 million dollars for each violation, plus such other relief as is in connection with each false entry or assignment, or such greater amount as provided by law;

6.      On Counts VI and VII, for appropriate declaratory relief and for compensatory damages, in an amount to be determined at trial, and for necessary post-judgment relief to prohibit the Defendants from violating 11 U.S.C. §§ 362 and 501, and from acting in violation of 11 U.S.C. § 524; and

7.      For all other and further relief as the Court may deem just proper and equitable.

Dated: February 5, 2016
       Washington, DC

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

CHANNING D. PHILLIPS, D.C. Bar #415793
U.S. Attorney for the District of Columbia

By:    */s/ Brian P. Hudak*
    DANIEL F. VAN HORN, D.C. Bar #924092
    KEITH V. MORGAN
    BRIAN P. HUDAK
    Assistant United States Attorneys
    555 Fourth Street, NW
    Washington, DC 20530
    (202) 252-2549

MICHAEL D. GRANSTON
RENÉE BROOKER
WILLIAM C. EDGAR, D.C. Bar #421179
Attorneys Civil Division
601 D Street, N.W.
Washington, D.C. 20005

RAMONA ELLIOTT
General Counsel
Executive Office for U.S. Trustees
441 G Street, N.W. Suite 6150
Washington, DC  20530
Tel.: (202) 307-1399
Fax: (202) 307-2397

*Attorneys for the United States of America*

For the State of Alabama:

OLIVIA MARTIN
Assistant Attorney General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Tel.:  334-242-7335
Fax:  334-242-2433

For the State of Alaska:


CYNTHIA C. DRINKWATER
Assistant Attorney General
Alaska Attorney General's Office
1031 W. 4th Avenue, Ste. 200
Anchorage, AK 99501
Tel.:   907-269-5200
Fax:   907-264-8554

For the State of Arizona:


MARK BRNOVICH
Arizona Attorney General
by Jeremy T. Shorbe
Assistant Attorney General
400 W. Congress Street, Suite S315
Tucson, AZ  85701
Tel.:   520-682-6504
Fax:   520-628-6532

For the State of Arkansas:
LESLIE RUTLEDGE
Attorney General

*Sarah Page Tacker*

SARAH PAGE TACKER
Ark. Bar No. 2002-189
Deputy Attorney General
Office of the Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas  72201
Tel.: 501-682-1321
Fax: 501-682-8118

For the State of California:

KAMALA D. HARRIS
Attorney General

TINA CHAROENPONG
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel.: 213-897-2000
Fax:  213-897-4951

For the State of Colorado, *ex. rel.*

CYNTHIA H. COFFMAN, Attorney General:

JENNIFER MINER DETHMERS
THERESA C. LESHER
Assistant Attorneys General
Consumer Protection Section
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
Tel.:    720-508-6228
Fax:    720-508-6040

For the State of Connecticut:

GEORGE JEPSEN, Attorney General

JOSEPH J. CHAMBERS
Assistant Attorney General
Office of the Connecticut Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel:  860-808-5270
Fax: 860-808-5385

For the State of Delaware:


MATTHEW UNTNER
Director Fraud Division
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE  19801
Tel.:   302-577-8935
Fax:   302-577-6499

For the District of Columbia:

KARL A. RACINE
Attorney General for the District of Columbia

NATALIE LUDAWAY
Chief Deputy

PHILIP ZIPERMAN
Director, Office of Consumer Protection
Office of the Attorney General
441 Fourth Street, N.W., Suite 600-South
Washington, D.C. 20001
Tel: 202-442-9886
Fax: 202-715-7726

For the State of Florida:

PAMELA JO BONDI
Attorney General

PATRICIA A. CONNERS
Deputy Attorney General

*Victoria a. Butler*

VICTORIA A. BUTLER
Chief Assistant Attorney General
Central Florida Bureau, Consumer Protection Division
3507 E. Frontage Road
Suite 325
Tampa, FL 33607
Tel:  813-287-7950
Fax:  813-281-5515

For the State of Georgia:


_____
JEFFREY W. STUMP
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Tel.:   404-656-3337
Fax:    404-656-0677

For the State of Hawaii:


JAMES C. PAIGE
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii 96813
Tel:  808-586-1180
Fax:  808-586-1205

For the State of Idaho

LAWRENCE WASDEN, Attorney General:

STEPHANIE GUYON
Deputy Attorney General
Office of the Idaho Attorney General
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID 83720-0010
Tel.:   208-334-2424
Fax:   208-334-4151

For the State of Illinois:

LISA MADIGAN
Attorney General

DEBORAH HAGAN
Chief, Consumer Protection Division
SUSAN ELLIS
Chief, Consumer Fraud Bureau
Illinois Attorney General's Office
100 W. Randolph, 12th Floor
Chicago, IL 60601
Tel.:   312-814-6351
Fax:   312-814-2593

For the State of Indiana:

RICHARD M. BRAMER
Director and Chief Counsel
Consumer Protection Division
Indiana Office of Attorney General
302 W. Washington St., IGCS 5th Fl.
Indianapolis, Indiana 46204
Tel.:   317-234-6843
Fax:   317-233-4393

For the State of Iowa:


PATRICK MADIGAN
Assistant Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Patrick.Madigan@Iowa.gov
Tel:  515-281-5926

For the State of Kansas:


_____

MEGHAN E. STOPPEL
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Tel.:   785-296-3751
Fax:   785-291-3699
meghan.stoppel@ag.ks.gov

For the Office of the Attorney
General of Kentucky:


ANDY BESHEAR
Attorney General
Commonwealth of Kentucky
State Capitol, Suite 118
700 Capital Avenue
Frankfort, Kentucky 40601-3449
Tel.:   502-696-5300
Fax:   502-564-2894

For the State of Louisiana:

JEFF LANDRY
Attorney General

Lisha C. Landry
Louisiana Bar Roll Number 34317
Assistant Attorney General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Consumer Protection Section
1885 North Third Street
Baton Rouge. Louisiana 70802
Tel.: 225-326-6471
Fax: 225-326-6499

For the State of Maine:


JANET T. MILLS
Attorney General
Burton Cross Office Building, 6th Floor
111 Sewall Street
6 State House Station
Augusta, Maine 04330
Tel.:   207-626-8800
Fax:   207-624-7730

For the State of Maryland:

BRIAN E. FROSH
Attorney General


_Lucy A. Cardwell_
LUCY A. CARDWELL
Assistant Attorney General
Office of the Attorney General
 of Maryland
200 Saint Paul Place
Baltimore, MD 21202
Tel:  410-576-6337
Fax:  410-576-6566

For The Commonwealth Of
Massachusetts:

MAURA HEALEY
Attorney General


1/29/16

JUSTIN J. LOWE
Mass. BBO # 624857
*Assistant Attorney General*
Public Protection and Advocacy Bureau
Consumer Protection Division
One Ashburton Place
Boston, MA 02108
Tel: 617-727-2200

For the State of Michigan:


_____

BILL SCHUETTE
Attorney General
D.J. PASCOE
Assistant Attorney General
525 W. Ottawa Street
PO Box 30755
Lansing, MI 48909
Tel.:   517-373-1160
Fax:   517-335-3755

For the State of Minnesota:

LORI SWANSON
Attorney General, State of Minnesota

NATHAN BRENNAMAN
Deputy Attorney General
Minnesota Attorney General's Office
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel.:   651-757-1415
Fax:   651-296-7438

For the State of Mississippi:

JIM HOOD, ATTORNEY GENERAL


BRIDGETTE W. WIGGINS
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 22947
Jackson, MS  39225-2947
Tel.:   601-359-4279
Fax:    601-359-4231

For the State of Missouri:

CHRIS KOSTER
Attorney General


RYAN S. ASBRIDGE
Missouri Bar No. 61440
Assistant Attorney General
Consumer Protection Division
PO Box 899
Jefferson City, MO  65102
Tel.:   573-751-7677
Fax:    573-751-2041

For the State of Montana:

TIMOTHY C. FOX
Attorney General
CHUCK MUNSON
Assistant Attorney General
Montana Department of Justice
P. O. Box 200151
Helena MT 59620-0151
Tel.:   406-444-2026
Fax:   406-442-1894

For the State of Nebraska:

DOUGLAS J. PETERSON,
Attorney General, #18146


_____
ABIGAIL M. STEMPSON, #23329
Assistant Attorney General
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509-8920
Tel.:   402-471-2811
Fax:   402-471-4725

For the State of Nevada:

ADAM PAUL LAXALT
Attorney General


SHERI ANN FORBES
Senior Deputy Attorney General
Nevada Bar No. 7337
10791 W. Twain Avenue
Suite 100
Las Vegas, Nevada 89135
Tel:    702-486-3085
Fax:    702-486-3283

For the State of New Hampshire:

James T. Boffetti
Senior Assistant Attorney General
Chief, Consumer Protection and
Antitrust Bureau
N.H. Department of Justice
33 Capitol Street
Concord, New Hampshire 03301
Tel.:   603-271-3643
Fax:   603-271-2110

For the State of New Jersey:

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY

_____

LORRAINE K. RAK
Deputy Attorney General
Chief, Consumer Fraud Prosecution Section
Division of Law
124 Halsey Street – 5th Floor
P.O. Box 45029
Newark, New Jersey 07101
Tel.:   973-877-1280
Fax:   973-648-4887

For the State of New Mexico:

_____

HECTOR H. BALDERAS,
Attorney General
Office of New Mexico Attorney
General
PO Drawer 1508
Santa Fe, NM 87504-1508
Tel:  505-222-9100
Fax:  505-222-9033

For the State of New York:

ERIC T. SCHNEIDERMAN
Attorney General


JANE M. AZIA
Bureau Chief
Bureau of Consumer Frauds & Protection
Office of the New York State Attorney General
120 Broadway
New York, NY 10271
Tel.:   212-416-8727
Fax:   212-416-6003

For the Attorney General of
North Carolina:

ROY COOPER
Attorney General

KEITH T. CLAYTON
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Tel: 919-716-6000
Fax: 919-716-6050
Email: kclayton@ncdoj.gov

For the State of North Dakota

WAYNE STENEHJEM
Attorney General

PARRELL D. GROSSMAN
(ID No. 04684)
Assistant Attorney General
Director, Consumer Protection and
Antitrust Division
Office of Attorney General
Gateway Professional Center
1050 E Interstate Ave, Ste. 200
Bismarck, ND  58503-5574
Tel:  701-328-5570
Fax: 701-328-5568

For the State of Ohio

MIKE DEWINE
Ohio Attorney General

MATTHEW J. LAMPKE (0067973)
Mortgage Foreclosure Counsel
JEFFREY R. LOESER (0082144)
JENNIFER L. MILDREN (0087564)
Assistant Attorneys General
Consumer Protection Section
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel:  614-466-8831
Fax: 877-650-4712

For the State of Oregon,

Attorney General
ELLEN F. ROSENBLUM:


JANET BORTH
Assistant Attorney General
Oregon Department of Justice
Financial Fraud/Consumer Protection
1162 Court St. NE
Salem, OR 97301
Tel.:   503-934-4400
Fax:    503-378-5017

For the Commonwealth of Pennsylvania

Office of Attorney General
BRUCE R. BEEMER
First Deputy Attorney General


_____

JOHN M ABEL
Senior Deputy Attorney General
Pennsylvania Office of the Attorney General
Bureau of Consumer Protection
15th Floor, Strawberry Square
Harrisburg, PA  17120
Tel:     717-787-1439
Fax:     717-705-3795

For the Rhode Island Department of Attorney
General:

GERALD COYNE
Rhode Island Department of Attorney General
Deputy Attorney General
150 South Main Street
Providence, RI 02903
Tel:    401-274- 4400 Ext. 2257
Fax:    401- 222-1302

For the State of South Carolina:

ALAN WILSON
Attorney General
JOHN W. MCINTOSH
Chief Deputy Attorney General
C. HAVIRD JONES, JR.
Senior Assistant Deputy Attorney General
JARED Q. LIBET
Assistant Deputy Attorney General
South Carolina Attorney General's Office
1000 Assembly Street, Room 519
Columbia, SC 29201
Tel.:    803-734-3970
Fax:    803-734-3677

For the State of South Dakota:

PHILIP D. CARLSON
Assistant Attorney General
South Dakota Attorney General's Office
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel.: 605-773-3215
Fax: 605-773-4106

For the State of Tennessee:

HERBERT H. SLATERY III
Attorney General and Reporter
Office of the Tennessee Attorney General
425 Fifth Avenue North
Nashville, TN 37243-3400
Tel.:   615-741-1671
Fax:   615-532-2910

For the State of Texas:

_____

RICHARD L. BISCHOFF
State Bar No. 02343200
Assistant Attorney General
Consumer Protection Division
401 E. Franklin Avenue, Suite 530
El Paso, Texas 79901
Tel.: 915- 834-5800
Fax: 915-542-1546

For the State of Utah:


_____

SEAN D. REYES
Utah Attorney General
350 North State Street, #230
Salt Lake City, UT 84114-2320
Tel.:  801-538-1191
Fax:  801-538-1121

For the State of Vermont:

WILLIAM H. SORRELL
Attorney General


JAMES LAYMAN
Assistant Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-2315

For The Commonwealth of Virginia,

*ex rel.* MARK R. HERRING,
Attorney General:

DAVID B. IRVIN (VSB #23927)
Senior Assistant Attorney General
MARK S. KUBIAK (VSB #73119)
Assistant Attorney General
Office of Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
Tel.:   804-786-7364
Fax:   804-786-0122

Case 1:16-cv-00199-RMC   Document 1   Filed 02/05/16   Page 84 of 87

For the State of Washington:

ROBERT FERGUSON
Attorney General

JEFFREY G. RUPERT WSBA #45037
Assistant Attorney General
AMY C. TENG WSBA #50003
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Tel: 206-464-6293
Fax: 206-587-5636

STATE OF WEST VIRGINIA
PATRICK MORRISEY
ATTORNEY GENERAL


_____

R. STEPHEN JARRELL
Assistant Attorney General
Office of the Attorney General of West Virginia
812 Quarrier Street, 1st Floor
P.O. Box 1789
Charleston, WV  25326
Tel:    (304) 558-8986
Fax:    (304) 558-0184
*Steve.R.Jarrell@wvago.gov*

For the State of Wisconsin:

BRAD D. SCHIMEL
Attorney General


_____

GWENDOLYN J. COOLEY
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Tel:   608-261-5810
Fax:   608-267-2778

For the State of Wyoming:

_____
PETER K. MICHAEL
Wyoming Attorney General
Wyoming Attorney General's Office
Kendrick Building
2320 Capitol Ave.
Cheyenne, WY 82002
Tel.:   307-777-7847
Fax:   307-777-3435